## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| MAN & MACHINE, INC.<br>3706 West Street<br>Landover, Maryland  20785<br><br>Plaintiff,<br><br>v.<br><br>SEAL SHIELD, LLC<br>3105 Riverside Avenue<br>Jacksonville, Florida  32205<br><br>SERVE:<br>Bradley W. Whitchurch<br>Registered Agent<br>3105 Riverside Avenue<br>Jacksonville, Florida  32205<br><br>– and –<br><br>SEAL SHIELD CORPORATION<br>3105 Riverside Avenue<br>Jacksonville, Florida  32205<br><br>SERVE:<br>Bradley W. Whitchurch<br>Registered Agent<br>3105 Riverside Avenue<br>Jacksonville, Florida  32205<br><br>Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Man & Machine, Inc., ("MMI") by and through undersigned counsel, hereby

brings the following Complaint against Defendants Seal Shield, LLC and Seal Shield Corporation

(collectively "Defendants" or "Seal Shield") for violations of the Lanham Act, false marking, and

common law unfair competition.

In support thereof, MMI makes the following allegations on personal knowledge and  upon information and belief.

<u>INTRODUCTION</u>

1.      MMI seeks preliminary and permanent injunctive relief, disgorgement of  profits, and other damages pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false or misleading commercial statements and unfair trade practices in interstate commerce.

2.      MMI further seeks damages for false marking pursuant to the False Marking Act, 35 U.S.C. § 292, and damages for common law unfair competition under Maryland law.

3.      Both Plaintiff MMI and the Seal Shield Defendants sell computer keyboards and computer mice and are direct competitors.

4.      MMI manufactures its products in the United States.   Upon information and belief, Seal Shield purchases products manufactured in China for sale in the United States.

5.      In their online advertisements and product data sheets, Defendants are disseminating false and/or misleading statements into interstate commerce  because they are proclaiming directly or indirectly, in words or substance, that the computer keyboards and computer mice that they manufacture (a) contain sufficient levels of silver to be "antimicrobial;" (b) contain sufficient levels of gold to be have anticorrosive connectors (c) are waterproof and/or suitable for dishwasher cleaning; (d) comply with EPA requirements for claiming a product possesses antibacterial or antimicrobial properties, and; (e) contain technology patented by Seal Shield or for which a patent is pending.

6.      All of these claims are false.   In fact, Seal Shield's computer keyboards and

computer mice (a) do not contain sufficient levels of silver to claim "antimicrobial" characteristics in either the plastic or rubber surfaces on components where bacteria and viruses can grow and multiply; (b) do not contain sufficient levels of gold to claim anticorrosive componentry; (c) are neither waterproof nor dishwasher safe; (d) do not comply with EPA requirements for claiming a product possesses antibacterial or antimicrobial properties, and; (e) do not contain technology patented by Seal Shield or for which a patent is pending.

7.      Defendants' actions are dangerously deceiving consumers, hospitals, doctors, medical clinics and causing significant and irreparable harm to MMI, which is losing sales of its computer keyboards and mice to Seal Shield.

8.      MMI's keyboards and mice are manufactured to in fact fight bacteria and contaminants with sealed components and waterproof designs that withstand environmental hazards in all workplace settings, characteristics almost identical to the ones that Defendants falsely promise and which its products do not deliver.

9.      Defendants' conduct is dangerous to the public and impairing the reputation and value of Plaintiff's brand in a way that cannot be fully or adequately compensated by money damages alone, and therefore a preliminary and permanent injunction are required.

## THE PARTIES

10.      Plaintiff Man & Machine, Inc. is a Maryland corporation with its principal place of business located at the address set forth in the caption of this Complaint.

11.      Defendant Seal Shield, LLC is a Florida limited liability company with its principal place of business located at the address set forth in the caption of this Complaint.

12.      Defendant Seal Shield Corporation is a Florida corporation with its principal place of business located at the address set forth in the caption of this Complaint.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction because this action arises out of violations of the federal laws pursuant to 28 U.S.C. §§ 1331, 1338(a), 15 U.S.C. § 1125(a), and 35 U.S.C. § 292, and under principles of supplemental jurisdiction, 28 U.S.C. § 1367.

14.     This Court has personal jurisdiction over the Seal Shield defendants because the Seal Shield Defendants have had, and continue to have, regular and systemic contacts in the State of Maryland by selling and offering to sell the products that form the basis for this action within this District.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District, Defendants sold its products in this District, Defendants disseminated and continue to disseminate false statements in this District, and MMI is suffering irreparable harm in this District.

## FACTUAL BACKGROUND

16.     Most, if not all, hospitals, medical clinics, and doctor's offices uses a keyboard and/or mouse.

17.     Hospitals use keyboards and mice that can be disinfected in order to protect their staffs and patients.

18.     Defendant Seal Shield markets numerous models of computer keyboards, that it claims to have "antimicrobial" capabilities, including but not limited to, the "Silver Surf™", "Silver Seal™", "Silver Storm™", "Seal Touch Glow2™", and "Silver Seal Medical Grade™" lines of keyboards (collectively, the "keyboards").

19.     Seal Shield also markets numerous models of computer mice, including but not limited to, "Silver Storm™ lines of mice mouse (collectively, the "mice").

20.     Seal Shield conducts business and sells its keyboards and mice in Maryland and throughout the United States via various websites, including www.sealshield.com, store.sealshield.com., and silverseal.com.  Upon information and belief, Seal Shield also sells its keyboards and mice through Walmart.com, Amazon.com, and other online retailers.

21.     In addition to its own websites and online presence through online vendors, Seal Shield advertises its keyboards and mice at consumer and commercial trade shows across the country by distributing product data sheets and other advertisement materials, and creating promotional product displays, which contain the false statements set forth in this complaint.

22.     Seal Shield disseminates into interstate commerce its online advertisements and product data sheets (which are attached as links in its website advertisements) that purport to accurately describe the properties of their "antimicrobial" keyboards and mice.

23.     The product data sheets and online advertisements contain repeated statements about function, contents, and other  measurable qualities of Seal Shield's keyboards and mice that necessarily implies that the truth of the statements are established by a reliable, properly performed, and properly analyzed scientifically-based tests, studies, and data.

24.     As set forth in greater detail below, the product data sheets and online advertisements are literally false because, among other reasons and on  information and belief, the alleged underlying tests, studies, and data in support thereof, are unreliable, improperly performed, and not properly analyzed.

25.     Furthermore, on information and belief, Seal Shield decided to publish and maintain the product data sheets and online advertisements knowing that they were literally false.

26.     The statements in Seal Shield's product data sheets and online advertisements are demonstrably false by  reference to reliable scientific tests.

27.     Further, Seal Shield's product data sheets and online advertisements contain several false and misleading statements to the detriment of MMI, as set forth below:

**Seal Shield's False Advertising Concerning the Antimicrobial Characteristics of its Computer Keyboards and Computer Mice**

28.     Seal Shield Claims misrepresents that its keyboards and mice have "antimicrobial" properties:

> "This product is Silver Seal™ protected. It contains an antimicrobial, fungistatic agent which protects the product and keeps it cleaner, greener and fresher by inhibiting the growth of microbial bacteria, mold, mildew and fungi on the product's surface."

*See generally*, Ex. 1, attached hereto.

29.     Seal Shield claims that the antimicrobial properties of its keyboards and mice stem from the "Silver Seal" technology, which they claim results from the availability of silver ions in the various products' composition:

> "SILVER SEAL™ solutions use soluble glass containing antimicrobial silver ions. The active ingredient of the antimicrobial additives in the SILVER SEAL™ solution is all-natural, pure silver. Silver and certain other metals such as copper have antimicrobial properties."

*See* Ex. 2, attached hereto.

> "Seal Shield, LLC is a manufacturer of infection control products and antimicrobial solutions. Our Silver Seal service helps our partners to identify the best and most cost effective antimicrobial solutions which meet all international compliance requirements.
>
> Silver Seal™ Protection is among the safest and most effective antimicrobial solutions in the industry. Our antimicrobial additives are EPA-registered, FDA listed, REACH compliant solutions that utilizes the properties of pure silver to protect products from mold, mildew, fungi and the spread of microbial bacteria and viruses on product surfaces. Seal Shield™ includes Silver Seal™ Protection in a number of its products to meet the demands of infection prevention specialists. Additionally, Silver Seal™ Protection is currently used in hundreds of products made by numerous manufacturers worldwide.
>
> We can help your organization implement Silver Seal™ Protection in to plastic,

silicone, paint, powder coats, textiles and numerous varied polymers. Our antimicrobial experts will consult with your product development team to determine the right solution for your product. We can provide on-site factory application sampling and in-house efficacy lab testing.  Based on the testing, we determine the ideal additive and optimum concentration necessary to provide the best and most cost-effective solution for your organization's applications.  We will perform on-site factory supervision and assist with implementation, handling, storage and MSDS training. Our in-house legal team will then provide suggested verbiage and review all marketing material and packaging claims to ensure compliance with EPA and FDA requirements.

Silver Seal™ makes antimicrobial implementation easy and cost-effective. Why not contact us about adding antimicrobial benefits to your product offerings?"

*See* Ex. 3, attached hereto.

"SILVER SEAL™ Protection provides the highest level of inorganic, antimicrobial protection available. Recognized by scientists and worldwide healthcare organizations, SILVER SEAL™ protection gives you the confidence that your environment is clean, safe and secure.

In the past, traditional antibacterial additives were manufactured from organic material. But recently, there have been reports of illness caused by organic antibacterial materials. Many organic antibacterial materials can be easily transferred from the product to the skin through sweat. Also when vaporized, they are inhaled into the lungs, causing headaches and indisposition. As a result, many of these common antibacterial products have recently been banned.

SILVER SEAL™ is different.  Our service insures an inorganic antimicrobial solution. Generally speaking, inorganic materials are highly safe (non-volatile) and heat-resistant, compared to organic materials. Therefore, antibacterial materials, if inorganic, can be safe and gentle to the human body.

**SILVER SEAL™ solutions use soluble glass containing antimicrobial silver ions.**

The active ingredient of the antimicrobial additives in the SILVER SEAL™ solution is all natural, pure silver. Silver and certain other metals such as copper have antimicrobial properties. For example, silverware and copperware have been known to prevent decay of water and food since the ancient times.

SILVER SEAL™ solutions use antimicrobial additives that are based on a soluble glass containing antimicrobial silver ions. Glass is generally considered to be a material with high chemical inertness due to its strong network structure. However, it is possible to lower this chemical inertness by continuously altering its structure, especially in water. Additionally, glass has an interesting property

which allows it to retain metal as ions. These properties have enabled chemists to create glass with low chemical inertness which can also retain antimicrobial metal ions such as silver and copper. With the presence of water or moisture, the glass will release these metal ions gradually to function as antimicrobial material.

**How It Works**

With the presence of moisture, the antimicrobial additive releases a few silver ions gradually. Silver ions have an ability to strongly bind to cellular enzyme of microbes and inhibit enzyme activity of cell wall, membrane, and nucleic acids.

As microbes have a negative surface charge, silver ions with a positive charge are drawn toward microbes, and disturb their electric balance. The result is that the microbes burst their cell walls and are extinguished.

Otherwise, silver ions are taken into microbes where they react and bond to the cellular enzyme microbes. This inhibits enzyme activity and multiplication of microbes, thus extinguishing the microbes. This unique application of this technology introduces a new era in infection control as applied to everyday products and surfaces.

.  .  .  .

*See* Ex. 2.

30.     The claims related to Seal Shield's use of silver as an "antimicrobial agent" are false.

31.     MMI tested Seal Shield's claims.  The Seal Shield keyboards and mice tested to date contain only trace amounts of silver insufficient to render any of the keyboards or mice "antimicrobial."  *See* Ex. 4, attached hereto.

32.     Further, even if the trace amounts of silver were sufficient to render Seal Shield's keyboards and mice "antimicrobial," and they are not, that silver would only render the keyboards and mice selectively and spuriously protected, and thus, not "antimicrobial" as a whole or in any sense that a consumer would understand.

33.     Of the Seal Shield keyboards and mice that Plaintiff tested, there are multiple surfaces that are not treated with any silver.  These surfaces include the interior membrane of the

open style keyboards, all cables, the internal printed circuit board assembly of Seal Shield's mice, and the scroll wheel of Seal Shield's mice.

34.     Without any silver in any of the foregoing high touch areas, Seal Shield's keyboards and mice cannot possibly be "antimicrobial," and Seal Shield's representation that silver renders its keyboards and mice "antimicrobial" is deceptive, as Seal Shield's "Silver Seal" has no meaningful effect and does not create an antimicrobial product.

35.     In addition, upon information and belief, Seal Shield determines the antimicrobial efficacy of its keyboards and mice by measuring the presence of staphylococcus aureus and escherichia coli according to a specific standard – JIS Z 2801 (the "JIS standard").  *See* Exs. 5-6, attached hereto.

36.     The JIS standard requires a twenty-four hour incubation period of bacteria sitting on a keyboard or mouse before measuring the bacteria on a particular keyboard or mouse.  *Id.*

37.     The JIS standard also requires a twenty-four hour long incubation period at conditions of 95% relative humidity and 35°C (95°F)).  *Id.*

38.     Seal Shield's claim that its keyboards and mice are "antimicrobial" based upon the JIS standard is misleading and deceptive because Seal Shield knows that a keyboard or mouse will not remain idle or unused in a "medical" environment for 24 hours after an infected user finishes with it – infection of a subsequent user will occur much sooner.

39.     Similarly, Seal Shield advertises its keyboards and mice to be "medical grade." Seal Shield knows that "medical grade" keyboards and mice used in a medical environment will not remain idle or unused for 24 hours in a "medical" environment.  *See* Ex. 1.

40.     Accordingly, the JIS standard referenced in Seal Shield's advertisements does not, and cannot, properly measure the "antimicrobial" capability of Seal Shield's keyboards or

mice in the real-world hospital or medical conditions that Seal Shield specifically advertises its keyboards and mice are designed to withstand.

41.     As with Seal Shield's false claims regarding the antimicrobial capabilities created by its use of silver, Seal Shield's claims that the JIS standard is a measure of its keyboards and mice "antimicrobial" capabilities are also false.

**Seal Shield's False Advertisement Concerning the "Dishwasher Safe" and "Waterproof" Characteristics of its Keyboards and Mice**

42.     Not only do Seal Shield's keyboards not perform as advertised, but they also cannot be cleaned as advertised – a crucial element to Seal Shield's claims – albeit false, that its keyboards and mice are "antimicrobial."

43.     Seal Shield repeatedly claims that its keyboards and mice are dishwasher safe for easy cleaning:

> "Just put them in the dishwasher to thoroughly clean and disinfect. Convenient product features makes it fast and easy to go straight from use to the dishwasher for cleaning and back again."

*See* Ex. 1, attached hereto.

> "The Silver Surf™ family of infection control keyboards has been designed from the inside out to be completely different than any other keyboard.
>
> We start with our patent pending, Seal Shield™ waterproof electronics technology, and add a sealed internal USB hub which can be factory customized to support multiple features, making the Silver Surf™ family of keyboards the most versatile washable keyboards ever. Enjoy supreme typing comfort with True Type tactile response from low profile, short travel keys and an integrated ergonomic wrist rest. Keys are laser etched so you won't have to worry about them fading away, even from frequent washings and cleaning with mild abrasives.
>
> The Silver Surf™ keyboard is certified to international waterproof standard IP-68, insuring that it is 100% waterproof and fully submersible. Don't be fooled by lower rated imitations or spill-proof solutions. Only Seal Shield™ technology guarantees that your keyboard is 100% waterproof, fully submersible and dishwasher safe! The Silver Surf™ keyboard features Silver Seal™ Technology for antimicrobial product protection from mold mildew, and odor causing

bacteria."

*Id.*, attached hereto.

"The Silver Seal Glow™ keyboard is the original, backlit, medical grade, dishwasher safe keyboard used by hospitals worldwide.  The Silver Seal Glow™ keyboard starts with our patent pending electronic waterproofing technology. Electronic components are sealed in a watertight housing safely tucked into this award-winning keyboard solution.  Enjoy LED backlighting with True Type typing comfort from the full-travel IBM-style keys which are laser etched to prevent fading from frequent washings or even cleaning with mild abrasives.  The Silver Seal Glow™ keyboard features a 24K Gold-plated USB connector that will not rust or corrode from water exposure.  Our exclusive Seal Cap™ (Patent Pending) prevents water intrusion through the cable connector when the keyboard is being washed.

Seal Shield™ waterproof technology means that the keyboards can be disinfected with healthcare grade sprays, without ever being disconnected or powering down. Or go straight from the dishwasher to the desktop with our exclusive Quick Connect™ cable feature.  Engineered to international waterproof standard IP-68, the Seal Shield™ keyboard is the ideal washable solution regardless of your preferred cleaning methods.

Don't be fooled by lower rated imitations and spill-proof solutions.  Only Seal Shield™ technology guarantees that your keyboard is 100% waterproof, fully submersible and dishwasher safe.  The Silver Seal Glow™ keyboard also includes Silver Seal™ technology for antimicrobial product protection from mold, mildew and odor causing bacteria."

*Id*.

"The new Silver Storm™ dishwasher safe keyboard, features an attractive ergonomic design, full travel, IBM style keys for a superior tactile feel and True Type typing experience.  The Silver Storm™ keyboard is rated to IP-66 washability and includes a 24k Gold USB connector and our exclusive Seal Cap™ which prevents water intrusion through the cable connector, making the keyboard 100% dishwasher safe.  The Silver Storm™ keyboard features Silver Seal™ Technology for antimicrobial product protection from mold, mildew, and odor causing bacteria."

*Id.*

"The Seal Shield keyboard is the original, medical grade, dishwasher safe, keyboard used by hospitals worldwide.  The Seal Shield Original Dishwasher Safe Keyboard starts with our patent pending electronic waterproofing technology.  Electronic components are sealed in a water tight housing safely

tucked into this award winning keyboard solution.

Enjoy True Type typing comfort from the full travel IBM style keys which are laser etched to prevent fading from frequent washings or even cleaning with mild abrasives.  The Seal Shield keyboard features a 24k gold USB connector that will not rust or corrode from water exposure and our exclusive Seal Cap (Patent Pending) which prevents water intrusion through the cable connector.

Seal Shield waterproof technology means that the keyboards can be disinfected with healthcare grade sprays, without ever being disconnected or powering down. Or go straight from the dishwasher to the desktop with our exclusive Quick Connect cable feature.  Engineered to international waterproof standard IP-68, the Seal Shield keyboard is the ideal washable solution, regardless of your preferred cleaning methods.  Don't be fooled by lower rated imitations and spill-proof solutions.  Only Seal Shield technology guarantees that your keyboard is 100% waterproof, fully submersible and dishwasher safe!

The Seal Shield keyboard is also available in a Silver Seal version which includes Silver Seal Technology for antimicrobial product protection from mold, mildew and odor causing bacteria."

*Id*.

"Seal Shield is the infection control specialist.  We offer healthcare technology for hospitals and your home.  Our unique combination of patent pending infection control products and trademark antimicrobial solutions, combine to create the most complete infection control solutions available.  Let Seal Shield's team of infection control specialists provide you with a total infection control solution that can help your organization break the chain of infection.

The World Health Organization (WHO) reports that infectious diseases are spreading faster than ever before, with potentially devastating impacts on the global economy and international security.  Seal Shield, LLC is a leader in infection prevention technology.  Seal Shield develops, manufactures, and sells the most complete family of healthcare infection control products for hospitals and the home.  In February 2007, Seal Shield introduced the fully submersible, dishwasher safe keyboard and mouse.  Further development of the company's Patent Pending waterproof electronics technologies has resulted in additional washable input devices including dishwasher safe keyboards, mice, TV remotes, cell phones and other advanced washable, antimicrobial solutions for a wide range of applications.  Seal Shield's products have been featured on TV news including Good Morning America, The Today show with Matt Lauer, NBC, CBS, CNBC, FOX, BBC, and the Science Channel; on NPR (National Public Radio); and in numerous internet and print media including Smart Computing, Good Housekeeping and a Popular Science "Must Have Product".  Today, Seal Shield manufactures over 100 infection control products in 27 languages with global

distribution and an install base in hospitals worldwide. In addition to Seal Shield's core medical device products, the company has become an expert in antimicrobial additives. Seal Shield has developed a trade secret "Silver Seal" mixing process for the application of silver in plastics and silicones to produce the most cost effective, EPA registered, FDA listed, antimicrobial solutions in the industry. Seal Shield utilizes Silver Seal Protection in its own medical input devices and also provides the Silver Seal Protection and implementation consulting to third party manufacturers for incorporation in medical devices and consumer products worldwide. Seal Shield's product road map calls for further development of its family of infection control medical devices and expansion of the company's antimicrobial business.

The rapid increase in cross contamination infections is the most critical issue facing healthcare today. In the United States alone, the Center for Disease Control (CDC) reports that one out of every twenty hospital patients gets an infection or two million people per year. Of the two million, close to 100,000 people die each year, ranking hospital acquired infections (HAI's) as the fourth largest killer in the United States, causing as many deaths as AIDS, breast cancer and auto accidents combined. According to the CDC, the cost to treat these infections is as much as $57,000.00 per incident or up to $45 Billion, nationally. Recently, Insurance and Medicare announced they will no longer reimburse hospitals for the cost of HAI's. As a result, healthcare organizations worldwide have been forced to bear these expenses. Today, hospitals are scrambling to implement cost effective infection control products and procedures that can help mitigate the spread of these deadly bacteria and viruses. Numerous independent studies have been conducted to determine the cause of increased hospital infection rates. Studies confirm that common touch surfaces are a major cross contamination point for the spread of infectious pathogens and that untreated, bacteria can survive on a hard surface for up to seven days. Viruses can survive even longer. Direct contact medical equipment, input devices and other hard to clean surfaces pose a significant challenge to infection control efforts. A 2005 University of Arizona study reported that computer keyboards, for example, harbor up to 400 times more microbial bacteria that the average toilet seat. Studies performed at the University of North Carolina discovered that up to 25% of hospital keyboards harbor the Super Bug- MRSA, but daily disinfecting of the keyboards could reduce the risk of cross contamination. Recently, global concerns over the spread of deadly H1N1 virus, Norovirus, MRSA and others have led to greater awareness as to the importance of effective infection control in hospitals and the home.

Seal Shield is a recognized leader in infection control innovation. Seal Shield's development team designs solutions that are demanded by major healthcare providers worldwide. Seal Shield currently has 7 Patents Pending as well as numerous registered trademarks and trade secrets protecting its unique technologies. Seal Shield has developed a rapid growth model through the leveraging of key partnerships. Seal Shield's sales are driven by major healthcare

chains with thousands of hospital installs worldwide.  In addition to the healthcare market, Seal Shield has product applications in food service, hospitality, education, libraries, heavy industry, construction, call centers and other multi-user environments. Seal Shield's success is in large part a result of partnership with major industry distributors including Tech Data Corporation, Synnex, Dell, CDW, PC Connection, MicroAge, Staples, PSS Medical, Gulf South Medical and many more.  Retail and e-tail partners include Wal-mart, Sam's, Amazon, Circuit City, CompUSA, Tiger Direct, Best Buy, Microcenter, The Source and others. Global medical device customers include GE, Philips, Draeger, Medtronics and others. This extensive global distribution network makes Seal Shield's manufactured products easy to source and readily available with just-in-time delivery to multiple markets for critical mass. In addition to Seal Shield's manufactured products division, Seal Shield provides antimicrobial consulting and implementation to third party organizations.  The Company's Silver Seal Antimicrobial Protection is an EPA registered, cost effective, antimicrobial additive which is utilized in Seal Shield's products and also marketed to third party manufacturers worldwide for use in their products."

*See* Ex. 7, attached hereto.

44.    As the foregoing advertisements make clear, Seal Shield, in addition to falsely claiming that its keyboards and mice retain "antimicrobial" capabilities, also claims that its keyboards are "waterproof" and washable in a dishwasher.  *See* Exs. 1 and 7.

45.    Seal Shield's claims concerning the so-called "waterproof" and "dishwasher safe" characteristics of its keyboards and mice are false.

46.    MMI tested Seal Shield's claims.  After washing the keyboards according to Seal Shield's instructions, the keyboards' USB connectors exhibited significant corrosion after only one wash cycle.  *See* Ex. 8, attached hereto.

47.    Under submersion and dishwashing tests after a *single* dishwasher cycle, the keyboards and their seals allowed the intrusion of a significant amount of water. Some keyboards, after a single dishwashing cycle, ceased functioning completely.  *Id*.

**Seal Shield's False Advertisement Concerning its Use of Gold and the Anticorrosive Character of the Connectors on its in its Keyboards and Mice**

48.    Seal Shield claims that its keyboards and mice are manufactured with a "gold-

plated USB connector." *See* Ex. 1.

49.     Seal Shield has also advertised that their keyboards feature "24K gold" connectors. *Id.*

50.     Seal Shield sometimes advertises that their keyboards feature "14K gold" connectors. *Id.*

51.     Whether claiming gold-plated, 14K or 24K gold connectors, Seal Shield advertises that the gold on the connectors of its keyboards and mice provides an "anticorrosive" characteristic. *Id.*

52.     Seal Shield's claims concerning its use of gold connectors, and the capabilities of those "gold" USB connectors, are false.

53.     MMI tested Seal Shield's claim.  In testing these connectors, MMI could find no detectable 24K gold.  *See* Ex. 8, attached hereto.

54.     Furthermore, after washing the keyboards according to Seal Shield's instructions, all of the keyboards' "gold" USB connectors – whether gold plated, 14K or 24K – exhibited significant corrosion after a *single* dishwasher cycle.

**Seal Shield's False Advertisement Concerning Their Compliance With Federal Environmental Protection Agency Regulations**

55.     As set forth above, Seal Shield claims to use silver as the "antimicrobial" agent in their keyboards and mice.

56.     Silver used as an antimicrobial agent as Seal Shield advertises is fungicide that must be registered with the Environmental Protection Agency ("EPA") pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136, *et seq.* ("FIFRA").

57.     Pursuant to FIFRA, and its interpretive and implementing regulations, Seal Shield cannot claim that its keyboards and mice are antimicrobial because of its use of silver as a

fungicide unless those products are registered by the EPA or the products fall under a FIFRA exemption.

58.      Seal Shield's keyboards and mice are not exempt from FIFRA.

59.      As set forth in this Complaint, Seal Shield falsely claims that its use of silver provides health benefits with respect to people – notably, all human users of Seal Shield's keyboards and mice.

60.      Seal Shield's unproven and unregistered "antimicrobial" claims concerning the human users of its keyboards and mice are harmful to the public because they promise products that have a self-sanitizing quality when, in fact, they do not and constitute false advertising and a violation of FIFRA.

**Seal Shield's False Advertisement Concerning Their "Patented" Technology and "Patents Pending"**

61.      Seal Shield claims that their keyboards and mice incorporate waterproof technology which is "patent pending:"

> "We start with our patent pending, Seal Shield™ waterproof electronics technology . . . ."

 *See* Ex. 1.

62.      Upon information and belief, no patents are pending for the Seal Shield Defendants or any of their principals for any of the technology incorporated in the keyboards or mice.

63.      Upon information and belief, Seal Shield applied for a single patent for waterproof technology, but that patent application (number 12/257,926) was abandoned on April 10, 2012.  *See* Ex. 9, attached hereto.

## COUNT I

### (Deceptive Advertising and Unfair Trade -- Violation of the Lanham Act)

64.     MMI repeats and realleges each and every allegation contained in Paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.     As described above, Seal Shield has made false statements or omissions of fact concerning their computer keyboards and mice in commercial advertising and promotion.

66.     Seal Shield has placed these false statements of fact in interstate commerce.

67.     Seal Shield's false statements of fact have actually deceived a substantial segment of the audience exposed to it, or have the capacity for such deception.

68.     The deception caused by the false statements or omissions of fact, as described above, have, or are likely to, influence purchasing decisions.

69.     Plaintiff has been injured as a result of Defendants' false statements including potential decline in sales and market share, loss of goodwill, reputational harm, and additional losses and damages.

70.     Defendants have been unjustly enriched at the expense of Plaintiff as a consequence of their false advertising.

71.     Defendants also have made establishment and "tests prove" claims, including in the product data sheets, that assert by necessary implication that the truth of the claims is established by a reliable, properly performed, and properly analyzed scientifically-based tests, studies and data.

72.     These claims are literally false because, among other reasons and on information and belief, the alleged underlying tests, studies and data in support thereof is unreliable, improperly performed, and not properly analyzed.

73.     By the foregoing acts, Defendants also have engaged in an unfair and deceptive scheme whereby they create a false and inaccurate designation of equivalence or substitution in spite of the fact that MMI and Silver Shield's products, are, in fact, not equivalent.

74.     These facts, standing alone, create the presumption of consumer deception because they make Defendants' conduct deliberate rather than innocent.  Because Defendants deliberately engaged in a deceptive commercial practice, an inference may be drawn that defendant has succeeded in confusing the public.

75.     The ongoing acts of Defendants constitute false advertising and unfair trade in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Plaintiff seeks to enjoin Defendants' false advertising and to recover money damages and the costs of this action, including its attorneys' fees.

## COUNT II

### (False Marking -- Violation of the False Marking Act)

76.     MMI repeats and realleges each and every allegation contained in Paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77.     Seal Shield has engaged in, and is currently engaged in, an extensive practice of false patent marking in violation of 35 USC § 292.

78.     35 USC § 292 states that "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word 'patent' or any word or number importing the same is patented ... when no application for patent has been made . . . for the purpose of deceiving the public ... has violated this section.

79.     Further, "a person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of

damages adequate to compensate for the injury."

80.     Seal Shield  has engaged in, and is currently engaged in, an extensive program to mark its keyboards and mice with the numbers of issued patents and/or Patent Pending designations, both on the products themselves and in advertising and technical materials.

81.     Many, if not all, of the patent marks that Seal Shield makes regarding their keyboards and mice products are false.

82.     For example, on its website, Seal Shield publishes advertising materials for each of its keyboards and mice stating that the products contain technology that is patent pending.  *See* Exs. 1 and 7.

83.      The apparent intent and practical effect of this language is to inform the reader that the specific advertised Seal Shield product is protected by a patent when it is not.

84.     Though Seal Shield marks its keyboards and mice to imply that those products are covered by a patent, these products are not covered by any patent and are thus falsely marked.

85.     Seal Shield has for years been falsely advertising and marking one or more of its keyboards or mice as "patented" or as "Patent Pending," on their website and/or in technical advertising Data Sheet materials and elsewhere.

86.     Seal Shield has marked the products discussed above with "patent" or "patent Pending" knowing them to be falsely marked.

87.     Seal Shield knowingly advertised the falsely marked products with the intent to deceive the public.

88.     Pursuant to 35 U.S.C. § 292, MMI has suffered an injury in fact casually connected to Seal Shield's false marking that is likely to be redressed by this Court.

- 19 -

## COUNT III

**(Unfair Competition – Violation of Md. Code Ann. Com. L. §§ 13-301(1),
13-301 (2)(i) and (iv), and 13-301(9)(i)**

89.     MMI repeats and realleges each and every allegation contained in Paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90.     The State of Maryland has an important interest in ensuring that persons and entities doing business with Maryland residents fully comply with Maryland laws.

91.     Upon information and belief, Seal Shield has knowingly made false and misleading representations as to the capabilities of its goods and services.

92.     The services offered by the parties implicate the public interest.

93.     Seal Shield's unfair and deceptive acts and practices as alleged herein are intended to, have the tendency to, and are likely to mislead and cause injury to MMI and other consumers.

94.     As set forth herein, Seal Shield has made representations that its keyboards and mice have an approval, characteristic, ingredient, and/or use that they do not have.

95.     As set forth herein, Seal Shield has made representations that its keyboards and mice are of a particular standard, quality, grade, style, and/or model that they are not.

96.     The conduct complained of herein constitutes unfair and deceptive trade practices in violation of Md. Code Ann. Com. L. §§ 13-301(1), 13-301(2)(i) and (iv), and 13-301(9)(i).

97.     MMI has no adequate remedy at law because damages alone cannot fully compensate MMI and other consumers for Defendants' misconduct.

98.     Unless enjoined by the Court, Seal Shield will continue to cause MMI irreparable injury. This threat of future injury to MMI's business requires injunctive relief to prevent continued misrepresentations and to ameliorate and mitigate MMI's injuries.   Unless such

conduct is enjoined, Seal Shield's misconduct will continue and MMI and other consumers will continue to suffer great and irreparable injury.

99.     In addition, Seal Shield's unfair competition has damaged, threatens further damage and jeopardizes MMI's business.

## PRAYER FOR RELIEF

WHEREFORE, MMI prays:

A.     For judgment that Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

B.     For a judgment that Defendants have violated the False Marking Act, 35 U.S.C. § 292.

C.     For a judgment that Defendants and damages for common law unfair competition under Maryland law.

D.     For a preliminary injunction requiring Defendants to immediately cease all use of the claims that its computer keyboards and mice possess antimicrobial properties.

E.     For a preliminary injunction requiring Defendants to immediately cease all use of the claims that its computer keyboards and mice comply with federal Environmental Protection Agency regulations.

F.     For a preliminary injunction requiring Defendants to immediately cease all use of the claims that its computer keyboards and mice possess patented technology or technology for which a patent is pending.

G.     For a preliminary injunction requiring Defendants to immediately cease all use of the claims that its computer keyboards and mice are "dishwasher safe" or waterproof.

H.     For a preliminary injunction requiring Defendants to immediately cease all use of the claims that its computer keyboards and mice use gold and for anticorrosive connectors.

I.     For permanent injunctive relief requiring Defendants and their representatives and all those persons in active concert or participation with them from claiming, in words or substance, directly or by implication, the claims identified in ¶¶ D-H set forth immediately above.

J.      For an assessment of damages.

K.      For an order requiring Defendants and their representatives to destroy the misleading and false advertising and issue corrective advertising in a form approved by the Court to dispel the serious competitive impact and effect of the  false representations described.

L.      For attorneys' fees and costs.

M.      For such other, further, or different relief as this Court may deem just and  appropriate.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all claims.


Dated:  June 6, 2014                              Respectfully submitted,

                                                  LAW OFFICE OF JAMES J. FOURNIER

                                       By:      /s/ James J. Fournier
                                                James J. Fournier
                                                D. Md. Bar No. 28163
                                                69 Bryant Street, N.W.
                                                Washington, DC  20001
                                                (202) 518-0059 - Telephone
                                                (202) 518-0059 - Facsimile
                                                James.Fournier@gmail.com

                                                *Counsel for Plaintiff Man & Machine, Inc.*